ams
# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DREW W. FREDERICK, CONNIE JO FREDERICK, LANCE D. FREDERICK, and LYNETTE K. FREDERICK, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 10-1063-JAR |
| SOUTHERN STAR CENTRAL GAS PIPELINE, INC., | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER DENYING MOTION TO REMAND

The case was originally filed by plaintiffs in Rice County, Kansas District Court. Defendant Southern Star Central Gas Pipeline, Inc. ("Southern Star") filed a Notice of Removal (Doc. 1), asserting that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because (1) the matter in controversy exceeds the sum or value of $75,000, and (2) the action is between citizens of different states. This matter is before the Court on plaintiffs Drew W. Frederick, Connie Jo Frederick, Lance D. Frederick, and Lynette K. Frederick's Motion to Remand to Rice County District Court (Doc. 10). Plaintiffs move for remand to state court pursuant to 28 U.S.C. § 1447(c) on the ground that this Court lacks subject matter jurisdiction. The motion is fully briefed and the Court is prepared to rule. For the reasons set forth in detail below, the Court denies plaintiffs' motion to remand.

**I.     Background**

On February 4, 2010, plaintiffs, who are lessors of certain gas storage leases, filed their Petition in Rice County, Kansas District Court seeking a declaratory judgment and reformation of a particular gas storage lease against the defendant, the lessee. The lease at issue was for a primary term of fifty years, which expired on July 24, 2009, and contains an annual option to extend the lease for "each repeated annual period, after expiration of said primary term, upon the same terms and provisions applicable for and during said primary term, including each repeated annual option."[1] The terms of the lease, drafted over fifty years ago, provide for an annual payment of $80.00, equal to approximately one dollar per acre. Plaintiffs claim that the current fair market value for gas storage leases greatly exceeds this one dollar per acre rental amount and assert in the Petition that, "[t]he current fair market value for gas storage leases greatly exceed one dollar per acre and, for example, has been found much higher - in one case found to be approximately $34.00 per acre per year." Plaintiffs seek reformation of the contract and a declaratory judgment that the lease, and other leases held by similarly situated individuals, be reformed and that defendant be required to tender an amount that is a fair and reasonable current market rate for the annual option. The Petition is silent on the total amount of monetary damages sought.

Defendant filed a timely Notice of Removal, which asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Defendant asserts that it satisfies the amount in controversy requirement because if the $34.00 per acre amount that plaintiffs cited as an example in their Petition is multiplied by the eighty acres that are leased to the defendant, then the $75,000 amount is exceeded if defendant exercises its annual option for approximately twenty-eight

---

[1](Doc. 1, Ex. A.)

years. Attached to defendant's Notice of Removal is the Affidavit of Robert S. Bahnick, Senior Vice-President Operations and Technical Services for Southern Star that states, "[a]bsent unanticipated future event precluding such activities, Southern Star intends to continue to utilize the Alden Field and to pay the annual rentals required each year to continue the Subject Lease in effect for at least another fifty years into the future."[2]

On March 24, 2010, plaintiffs moved to remand, claiming that this Court lacks subject matter jurisdiction. Specifically, plaintiffs allege that the amount in controversy does not exceed $75,000. Additionally, plaintiffs are requesting attorneys' fees and other actual expenses incurred as a result of the removal.

## II. Analysis

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only the power authorized by Constitution and statute.'"[3] A civil action is removable only if plaintiffs could have originally brought the action in federal court.[4] The court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[5] The rule is inflexible and without exception, and requires a court to deny its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record.[6]

Jurisdiction based on diversity of citizenship exists when a dispute between citizens of

---

[2] (Doc. 1, Ex. B.)

[3] *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[4] 28 U.S.C. § 1441(a).

[5] 28 U.S.C. § 1447(c).

[6] *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1257 (D. Kan. 2004) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 684, 702 (1982)).

different states involves an amount in controversy exceeding $75,000.[7] In this case, it is undisputed that there is complete diversity among the parties. The jurisdictional issue is whether the amount in controversy is met. Defendant contends that the declaratory relief and contract reformation sought by plaintiffs would exceed $75,000.

When the state court complaint does not state a specific amount that the plaintiff seeks to recover, "the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play . . . . It is only the jurisdictional facts that must be proven by a preponderance—not the legal conclusion that the statutory threshold amount is in controversy."[8] The Tenth Circuit has adopted the Seventh Circuit's explanation of this standard:

> To recap: a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.[9]

In light of this standard, the Court must determine whether defendant can prove jurisdictional facts—what plaintiffs stand to recover—by a preponderance of the evidence.

In cases seeking declaratory and injunctive relief, "the amount in controversy is measured by the value of the object of the litigation."[10] The Tenth Circuit has followed what has

---

[7]28 U.S.C. § 1332(a).

[8]*McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) (emphasis in original).

[9]*Id.* (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

[10]*Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).

commonly been referred to as the "either viewpoint rule," which considers either the value to the plaintiff or the cost to the defendant of injunctive and declaratory relief as the measure of the amount in controversy for purpose of meeting the jurisdictional minimum.[11]  Under *Meridian*, there are several ways for the removing defendant to establish the amount plaintiff seeks to recover:

> [B]y contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.  The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant).[12]

Defendant contends that "it is proper to extrapolate the increase in value of a lease over the potential life of the contested lease to arrive at the jurisdictional amount."  Defendant argues that the cost to defendant if the lease was reformed as sought by plaintiff in the Petition, would exceed $75,0000.  This contention is based on plaintiffs' reference in the Petition to a comparable fair market value for the lease at issue, $34.00 per acre and on Bahnick's affidavit, attesting to the likelihood that the annual option will be renewed in the future.  Bahnick attests that Southern Star intends to exercise the lease option for at least another fifty years because the lease is for an underground storage field ("Alden Field") that is "an integral part of Southern Star's natural gas transportation system."  Bahnick further attests that there are no plans to

---

[11]*Id.* (citing *Justice v. Atchison, Topeka & Santa Fe Ry*, 927 F.2d 503, 505 (10th Cir. 1991)).

[12]*Meridian*, 441 F.3d at 541-42; *see also Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245, 1249 (D. Kan. 2009).

abandon Alden Field and that Southern Star intends to continue to utilize Alden Field and pay the annual rentals required to continue the lease. Plaintiffs respond that this evidence falls short of what is required to establish jurisdictional facts by a preponderance of the evidence because the $34.00 per acre amount was merely provided as an example in the Petition and because Bahnick's statement of Southern Star's future intent to renew the lease annually for the next fifty years is speculative.

"A plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount. . . . [D]efendant[] must show how much is in controversy by other means."[13] First, defendants rely on a comparable rental amount based on the allegations in the Petition. Plaintiffs state in the Petition that the current fair market value "greatly exceed one dollar per acre and, for example, has been found much higher—in one case found to be approximately $34.00 per acre per year." "A complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal."[14] Next, defendant submitted the Bahnick affidavit, which may be used as evidence of jurisdictional facts.[15] Finally, defendant relies on the terms of the lease itself, attached to the Notice of Removal, that Southern Star has an obligation to pay the rental amount so long as it wishes to utilize the natural gas stored under plaintiffs' property. Bahnick's affidavit establishes not only that Southern Star intends to continue utilizing this natural gas, but that the Alden Field is an integral part of its business.

Plaintiffs discount defendant's evidence of jurisdictional facts as conclusory and speculative. First, they argue that defendant does not provide any specific or detailed figures,

---

[13] *McPhail*, 529 F.3d at 955.

[14] *Id.*

[15] *See id.* at 956.

but instead simply pulled the $34.00 figure from the Petition without any further factual support that it is a comparable figure. But this figure was provided by <u>plaintiffs</u>, not by defendant. As explained by the Tenth Circuit in *McPhail*, a removing defendant may rely on allegations in the complaint for its damages estimate.[16] Presumably, plaintiffs alleged this amount because they intend to prove at trial that the fair market value of the lease is worth up to $34.00 per acre. And the Petition establishes that the lease concerns approximately eighty acres.

Next plaintiffs point to language in *Martin v. Franklin Capital Corp.*,[17] that suggests relying on their fair market value example is speculative and does not constitute evidentiary support for this jurisdictional fact. In *Martin*, the Tenth Circuit found that the removed complaint did not show a claim in excess of the jurisdictional amount, reversing the district court.[18] It explained that "defendants viewed every dollar amount mentioned in the complaint as an item of damages claims by the [plaintiffs] without regard to allegations making clear the [plaintiffs] were not in fact seeking all those amounts."[19] Unlike in *Martin*, plaintiffs are unable to point to allegations in their Petition that "make clear" that they are not seeking to reform the price the of the contract to $34 per acre. Plaintiffs appear to rely on the fact that they do not make a specific claim for monetary damages in the Petition, but *McPhail* makes clear that they may not avoid federal jurisdiction by simply remaining silent. The Petition seeks reformation of the contract and declaratory relief. In order to determine the amount in controversy, the Court must determine the value of this relief to the plaintiff, or the cost to defendant.

---

[16] *Id.* at 955.

[17] 251 F.3d 1284, 1290–91 (10th Cir. 2001), *aff'd*, 546 U.S. 132 (2005).

[18] *Id.*

[19] *Id.* at 1291.

In *Thomas Well Service, Inc. v. Williams Natural Gas Co.*[20] the defendant removed the case to federal court and provided specific and detailed figures in its attached affidavit that were based on past usage of gas leases.[21] The court found that the amount of consideration paid on the leases was not the only indicator of fair market value and, instead, looked to the likelihood of discovering minerals, set forth in affidavits provided by the defendant.[22] The Court agrees with defendant that, like in *Thomas Well Service, Inc.*, the value of this case to plaintiff must take into account the likelihood that defendant, or its successors, will continue to exercise the annual option on the contract. Defendant has submitted evidence showing that it has a strong incentive to exercise this annual option for the next fifty nears.

In *Boeing Wichita Credit Union v. Wal-Mart Real Estate Business, Trust*,[23] the court noted that evidence of a comparable lease with another tenant on the same property, extrapolated over the potential life of the lease, may have put the value of the litigation over the $75,000 threshold.[24] Yet, because defendant merely submitted a conclusory affidavit that the value of the leased property exceeded $75,000, there was insufficient evidence that the amount in controversy exceeded the jurisdictional minimum.[25] Defendant argues that it has taken Judge Belot's suggestion in *Boeing* and extrapolated an amount over the potential life of the lease. The Court agrees.

---

[20] No. 93-4090, 1993 WL 393708 (D. Kan. Sept. 8, 1993).

[21] *Thomas*, 1993 WL 393708, at *2.

[22] *Id.* at *2–3.

[23] 370 F. Supp. 2d 1128 (D. Kan. 2005).

[24] *Id.* at 1130.

[25] *Id.*

Defendant has shown by a preponderance of the evidence facts that make it possible that the amount in controversy exceeds $75,000. Based on plaintiffs' statement in their claim for reformation that a fair market value for the lease could be $34 per acre, along with the Bahnick affidavit establishing a likelihood that defendant will renew the annual option contract for the next fifty years, the Notice of Removal establishes jurisdictional facts by a preponderance of the evidence. It is not apparent to a legal certainty that the amount in controversy is worth less than $75,000.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' Motion to Remand (Doc. 10) is **denied**.

**IT IS SO ORDERED**.

**Dated: July 28, 2010**

 **S/ Julie A. Robinson**
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**