### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DREW W. FREDERICK, CONNIE JO ) <br> FREDERICK, LANCE D. FREDERICK, ) <br> and LYNETTE K. FREDERICK, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> SOUTHERN STAR CENTRAL GAS ) <br> PIPELINE, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 10-1063-JAR |

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Class Certification Under FRCP 23 (Doc. 51). Plaintiffs seek class certification of their claims for reformation and declaratory judgment under Counts I and II of their First Amended Complaint.[1] They seek certification of a class defined as: All owners of mineral and/or surface rights who are Lessors of certain gas storage leases with Cities Service Gas Company, Lessee, a predecessor in interest to Southern Star, current operator of the Alden Natural Gas Storage Field located in Rice County.

Plaintiffs allege that they are members of a class of individuals and/or entities composed of the owners of mineral and/or surface rights and are "Lessors" of certain Gas Storage Leases ("Gas Storage Leases") with Cities Service Gas Company, Lessee, a predecessor in interest to defendant Southern Star, the current operator of the Alden Natural Gas Storage Field located in Rice County, Kansas.

---

[1] Doc. 42. Plaintiffs also have a claim for damages on an expired lease that is not subject to their motion for class certification.

Plaintiffs allege that they are successors in interest to the named lessors in a Gas Storage Lease entered into on July 25, 1959 ("Subject Lease").  Defendant is the successor in interest to the named lessee.  The lease was for a primary term of fifty years, which plaintiffs contend expired on July 24, 2009, and contains an "annual option to extend and continue [the] lease for and during each repeated annual period, after the expiration of said primary term, upon the same terms and provisions applicable for and during said primary term, including each repeated annual option."[2] The Subject Lease provides for an annual payment of $80.00, equal to one dollar per acre.

Plaintiffs claim that the Gas Storage Leases are inequitable and unconscionable because the current fair market value for gas storage leases greatly exceeds this one dollar per acre rental.  Plaintiffs seek reformation of the contract and a declaratory judgment that the Subject Lease, and other Gas Storage Leases held by similarly situated individuals, are unconscionable and inequitable and should be reformed, and that defendant be required to tender an amount in exercise of the annual option that is determined to be fair and reasonable at current market value rates for gas storage.   Defendant requests that any Gas Storage Leases at issue be declared valid, binding, and in full force and effect.[3]

Plaintiffs allege that the Gas Storage Leases underlying the Alden Field, with the exception of one lease which is currently the subject of litigation separate from this action, are all similar to the Subject Lease with respect to the length and payments provided for an annual option.  Plaintiffs argue that class certification is appropriate under Fed. R. Civ. P. 23(a) and

---

[2] *Id*. at Ex. A, ¶ 3(a).

[3] Doc. 48.

23(b)(2) and (b)(3); plaintiffs should be class representatives; and plaintiffs' counsel should act as class counsel.

## I. Class Certification Under Rule 23

Fed. R. Civ. P. 23 governs class actions in federal court. In deciding whether the proposed class meets the requirements of Rule 23, the Court may accept plaintiffs' substantive allegations as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints."[4] The Court must conduct a "rigorous analysis" to ensure that plaintiffs' putative class meets the requirements of Rule 23.[5] The court possesses significant latitude in deciding whether or not to certify a class.[6] Whether a case should be allowed to proceed as a class action is an intensely fact-based question that is fraught with practical considerations.[7]

### A. Rule 23(a) Requirements

As the party seeking class certification, plaintiffs must show "under a strict burden of proof" that their putative class meets the requirements of Rule 23.[8] Plaintiffs must first satisfy all four prerequisites of Rule 23(a) by showing that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) plaintiffs' claims or defenses are typical of the claims or defenses of the class and (4) plaintiffs will fairly

---

[4] *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (citation omitted).

[5] *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quotations and citations omitted).

[6] *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (citing *Shook v. Bd. of Cnty. Comm'rs,* 543 F.3d 597, 603 (10th Cir. 2008)).

[7] *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

[8] *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)).

and adequately protect the interests of the class.[9]  These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation.  If the requirements of Rule 23(a) are met, plaintiffs must then show that their case fits within one of the categories described in Rule 23(b).[10]

1)  <u>Numerosity</u>:

To meet their burden with respect to the numerosity element, plaintiffs must establish "that the class is so numerous as to make joinder impracticable."[11]  There is "no set formula to determine if the class is so numerous that it should be so certified."[12]  Because it is such a fact-specific inquiry, the district court is granted wide latitude in making this determination.[13]

It appears that there are currently thirty-three Gas Storage Leases, many of which have more than one lessor.  However, the number of potential class members cannot accurately be ascertained by simply adding the individual lessors because: currently there are four gas storage lessors who are the lessors of multiple Gas Storage Leases; one lessor has given an affidavit stating that she will not participate in the class action if a class is certified; three of the leases do not have annual option payment provisions (there is no such provision to reform); and one lease can be terminated by either party annually after expiration of the primary term.[14]  When these factors are considered, the number of distinct, individual lessors is reduced to thirty-nine.

---

[9]Fed. R. Civ. P. 23(a).

[10]*See* Fed. R. Civ. P. 23(b).

[11]*Trevizo*, 455 F.3d at 1162 (citation omitted).

[12]*Id.* (citing *Rex v. Owens ex rel. Oklahoma,* 585 F.2d 432, 436 (10th Cir. 1978)).

[13]*Id.* (citation omitted).

[14]*See* Doc. 62-1, 62-3.

Approximately twenty-nine of the thirty-nine individual lessors are either married or otherwise related to another lessor, or involve a trust of an individual already counted as a lessor.  Thus, the number of potential class members is fairly low in this case.

Plaintiffs argue that the class members are spread out geographically, adding to the necessity for class certification,[15] and that the cost to small individual plaintiffs could be prohibitive.  Although seven lessors appear to have out-of-state addresses, one involves a lease subject to annual termination and one relates to a lease that has no annual option provision.  Furthermore, if the leases with related lessors are only counted as one lessor, the number of out-of-state lessors is reduced to four.  The Gas Storage Leases in this case are all confined to not only one state, but to one county, and the lessors involved have all been identified.  Plaintiff has failed to demonstrate any factual basis for concluding that the potential class members would be deterred from joining this case based on the cost.[16]  The Court finds that plaintiffs have not met their burden of proving that the class is so numerous as to make joinder impracticable.

2) Commonality:

Plaintiffs must also show questions of law or fact common to the class.  The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[17]  To justify departure from that rule "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[18]

---

[15] *See Schreiber v. Nat'l Collegiate Athletic Ass'n,* 167 F.R.D. 169, 174 (D. Kan. 1996) (finding that geographic dispersal adds to difficulty of joining parties and weighs in favor of class certification).

[16] *See Trevizo*, 455 F.3d at 1162-63 (finding that the district court did not abuse its discretion in finding that joinder was practical despite plaintiffs' argument that the putative class members spoke limited English and were fearful of the legal system, where plaintiffs failed to demonstrate any factual basis for their argument).

[17] *Wal-mart Stores v. Dukes,* 131 S. Ct. 2541, 2011 WL 2437013, *6 (June 20, 2011) (citations omitted).

[18] *Id.* (citations omitted).

Plaintiffs claim that the putative class members will have the same dispositive legal issue: Are the terms of the Gas Storage Leases unconscionable such that they should be reformed to reflect current market values? They argue that this same issue applies across the board to each of the leases and the lessors. However, the phrasing of plaintiffs' question is not dispositive. The Supreme Court in *Wal-Mart v. Dukes*, noted that the language in the commonality requirement of Rule 23(a)(2) is easy to misread because "[a]ny competently crafted class complaint literally raises common 'questions.'"[19] Plaintiffs' claims must depend upon a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[20] Therefore, it is not the raising of common "questions" that matters, but rather "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."[21]

A court's analysis of the certification issue frequently entails some overlap with the merits of the plaintiff's underlying claim and "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[22] In this case, plaintiffs are alleging that they do not seek reformation due to fraud, misrepresentation or mistake of fact, and that their claim for reformation in this case is solely based on the principle that:

> The Court may reform the provisions of a contract where the enforcement of the

---

[19]*Id.* at *7.

[20]*Id.*

[21]*Id.* (citation omitted) (emphasis in original).

[22]*Id.* (citations omitted).

>contract would be unconscionable in that it would cause undue hardship and injustice not contemplated or reasonably foreseeable by the parties at the time the contract was entered.[23]

Plaintiffs argue that the evidence required to prove reformation in this case will primarily consist of common facts and opinions with respect to the injustice posed by the payment of $1 per acre per year, an injustice not reasonably foreseeable when the contracts were entered.

The Gas Storage Leases were executed at various times, for various primary terms, and under a variety of different terms and conditions. Defendant alleges that there will be waiver, ratification, and estoppel issues unique to the various leases and lessors. Another key difference among the leases has to do with provisions for, or the lack of provisions for, free or reduced-cost gas to the lessors. More importantly, some lessors may value the free gas clause while others do not, depending on whether or not they own the surface rights or have a structure on the land. There are significant distinctions among class members that render the question of unconscionability one that is individual to each purported class member rather than common to the group. "[A] determination of unconscionability would necessitate individual inquiries into numerous factual considerations, such as . . . the circumstances surrounding execution of the contract."[24] "A question is not common . . . if its resolution turns on a consideration of the individual circumstances of each class member."[25]

In *Trevizo,* the Tenth Circuit acknowledged the district court's broad discretion in assessing commonality, and concluded that the district court did not abuse its discretion in

---

[23]*See Kan. Baptist Convention v. Mesa Operating Ltd. P'ship*, 864 P.2d 204 (Kan. 1993).

[24]*Commander Props. Corp. v. Beech Aircraft Corp.,* 164 F.R.D. 529, 539 (D. Kan. 1995) (citation omitted).

[25]*Hershey v. ExxonMobil Oil Corp.*, No. 07–1300–JTM, 2011 WL 1234883 at *5 (D. Kan. March 31, 2011) (citation omitted).

determining that commonality was not met.[26]  The district court found that because a determination of reasonableness, which was central to plaintiffs' claims, would rely on numerous factors which differ significantly as to many plaintiffs, the divergent fact patterns presented made the case inappropriate for class action status.[27]  Likewise, a determination of unconscionability in this case would rely on factors individual to each plaintiff, such as whether an undue hardship existed and what was reasonably foreseeable by the parties at the time the contract was entered into.[28]  Even if plaintiffs were able to meet their burden of proving commonality, their claims would fail under the predominance inquiry of Rule 23(b)(3), which is a far more demanding standard.[29]  Rule 23(a)(2) "requires the Court to find whether common questions of law or fact exist—not whether they predominate, as Rule 23(b)(3) requires."[30]

3) Typicality:

Plaintiffs must prove that their claims are typical of those of the putative class as required by Rule 23(a)(3).  Therefore the class representative must "be a member of the proposed class, have interests coextensive with and not antagonistic to the interests of the class, and have

---

[26]*Trevizo v. Adams,* 455 F.3d 1155, 1163 (10th Cir. 2006) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

[27]*Id.*

[28]*See, e.g., Bailey v. Sabine River Authority,* 54 F.R.D. 42 (W.D. La. 1971) (holding under Rule 23(b)(3) that an action could not be maintained as a class action where court would be called upon to examine circumstances surrounding each claimant's understanding of contract with authority, and such a situation would rapidly deteriorate into what this rule governing class actions precisely prohibits, that is, a myriad of suits, each requiring individual attention).

[29]*Farrar v. Mobil Oil Corp.*, 234 P.3d 19, 23 (Kan. Ct. App. 2010) (stating that Rule 23(b)(3) is far more demanding and tests whether proposed classes are sufficiently *cohesive* to warrant adjudication by representation).

[30]*Freebird, Inc. v. Merit Energy Co.*, No. 10–1154–KHV–JPO, 2011 WL 13638 at *3 (D. Kan. Jan. 4, 2011).

suffered the same injury as the class members."[31]  The class representatives claims may differ factually so long as they arise from the same events or course of conduct and are based on the same legal or remedial theory.[32]  "The typicality requirement dovetails with the Rule 23(a)(4) adequacy of representation requirement . . . [and] . . . [a]typical claims potentially create antagonistic interests."[33]  Because the Court finds that plaintiffs have claims antagonistic to potential class members, the Court will address this conflict with regard to plaintiffs' adequacy of representation under Rule 23(a)(4).

4) <u>Adequacy</u>:

The final Rule 23(a) requirement is that the named plaintiffs and their counsel will adequately represent the class.  Rule 23(a)(4) involves two issues: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[34]  Defendant does not challenge the adequacy of plaintiffs' counsel to serve as class action counsel, but argues that plaintiffs would not be adequate class representatives.

A class representative is adequate as long as the class representative does not have a conflict which goes to the heart of the claims made by the class.[35]  The existence of minor conflicts alone will not defeat a party's claim to class certification; the conflict must be a

---

[31]*Commander Props. Corp. v. Beech Aircraft Corp.,* 164 F.R.D. 529, 535 (D. Kan. 1995) (citations omitted).

[32]*Id.* (citation omitted).

[33]*Id.* at 536.

[34]*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002), *cert. denied sub nom. Brelsford v. Rutter & Wilbanks Corp*, 539 U.S. 915 (2003) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)).

[35]*Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

"fundamental" one going to the specific issues in controversy.[36] A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other class members.[37] "In such a situation, the named representatives cannot 'vigorously prosecute the interests of the class through qualified counsel' because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members."[38]

Plaintiffs argue that they have no positions antagonistic to the class. However, the Court disagrees and finds that the instant case presents a fundamental conflict in that some lessors claim to have been harmed by the same conduct that benefitted others.[39] An argument that higher gas prices warranted reformation with regard to lease payments could jeopardize some lessors' use of free gas. The lessor of one lease, Alice Mattson, has signed an affidavit stating that her family has received free gas to multiple buildings and dwellings on their properties since the 1960s pursuant to a Gas Storage Lease; that her family has benefitted significantly from the free gas provided; that she believes her relatives took these potential future benefits into account when their Gas Storage Leases were executed; and that she is not interested in joining the current lawsuit to reform the leases.[40] Most of the Gas Storage Leases contain provisions granting the lessors rights to free gas, but some do not, and even among those granting such rights the terms

---

[36]*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citations omitted).

[37]*Id.*

[38]*Id.* (citations omitted).

[39]*Cf. Schell v. Oxy, USA, Inc.,* No. 07–1258–JTM, 2009 WL 2355792 at *4 (D. Kan. July 29, 2009) (finding no conflict where the royalty owners and free gas users both benefitted from the situation presented and were not in conflict with each other, but rather were in conflict with the lessee).

[40]Doc. 62-3, Aff. of Alice Mattson.

10

and conditions regarding the free gas rights vary.  Ms. Mattson's affidavit is a classic illustration of how the interests of plaintiffs may be antagonistic to the interests of other gas storage lessors. The importance of these free gas provisions varies among lessors.  Regardless of whether the gas storage lessors with leases that contain free gas provisions have exercised their free gas rights in the past, they still have the right to do so in the future under the current terms of their leases. However, if the leases are reformed to increase the annual storage rental payment because of the increase in gas prices over time, as plaintiffs request, then defendant argues that it will assert that its obligations under the leases to provide free gas at those same increased prices should also be reformed.  The Court finds that plaintiffs have failed to meet their burden of proving adequacy of representation under Rule 23(a)(4).  Because Plaintiffs have failed to prove all the prerequisites for class certification under Rule 23(a), the Court need not address the requirements of Rule 23(b) and class certification must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Class Certification Under FRCP 23 (Doc. 51) is DENIED.

**IT IS SO ORDERED.**

Dated: September 2, 2011

                         S/ Julie A. Robinson
                         JULIE A. ROBINSON
                         UNITED STATES DISTRICT JUDGE